IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAN 2 6 2016

**DAVID GREGORY LANDECK,**

      Petitioner,

v.                                      Civil Action No. **3:15CV106**

**DAVID ZOOK,**

      Respondent.

## MEMORANDUM OPINION

David Gregory Landeck, a Virginia state prisoner proceeding *pro se*, brings this petition

pursuant to 28 U.S.C. § 2254 (hereinafter, "§ 2254 Petition," ECF No. 1) challenging his

conviction in the Circuit Court of the City of Richmond, Virginia ("Circuit Court"). In his

§ 2254 Petition, Landeck argues entitlement to relief based upon the following grounds:[1]

> **Claim One:** Counsel rendered ineffective assistance "pretrial with respect to motion *in limine*." (*Id.* at 8.)
>
> **Claim Two:** Counsel rendered ineffective assistance "with respect to counsel's failure to propose alternate jury instruction." (*Id.* at 10.)
>
> **Claim Three:** "Prosecutorial misconduct/plain error . . . at trial with respect to multiple instances of the prosecution's improper rebuttal argument . . . . (*Id.* at 11-12.) Specifically, the Commonwealth:
> > (a) & (b) engaged in "[i]mpermissible vouching" by "improperly express[ing] his opinion of the veracity of a defense witness" (*id.* at 12-13);
> > (c) "unlawfully manipulated the evidence . . . by materially misstating . . . prior testimony . . ." (*id.* at 13); and
> > (d) "made a scandalous, improper and racially inflammatory comment to which the court sustained defense counsel's objection . . . ." (*id.* at 15).

---

[1] The Court has omitted the emphasis in the quotations from Landeck's submissions. Because several of Landeck's "grounds" encompass allegations of both prosecutorial misconduct and ineffective assistance of counsel with regard to counsel's response to that conduct, in an abundance of caution, the Court has separated these grounds into Claims Three and Four.

Claim Four:    Counsel rendered ineffective assistance by his "ineffective failure to challenge or object to multiple plain errors and to adequately challenge the court's insufficient remedial instruction regarding counsel's only objection to the inflammatory language." (*Id.*) Specifically counsel failed to object to the Commonwealth's:
   
    (a) & (b) "[i]mpermissible vouching" (*id.* at 12-13);
   
    (c) "unlawful[] manipulat[ion of] the evidence . . . by materially misstating . . . prior testimony . . ." (*id.* at 13); and
   
    (d) "scandalous, improper and racially inflammatory comment to which the court sustained defense counsel's objection . . . ." (*id.* at 15).

Claim Five:    Counsel rendered ineffective assistance on appeal. (*Id.* at 17.)

Claim Six:     "Absence (ineffective assistance) of counsel at initial-review collateral proceedings may have created a circumstance in which petitioner defaulted or gave the appearance of defaulting on certain claims raised in his amended petition." (*Id.* at 18.)

Respondent moves to dismiss the § 2254 Petition on the grounds that Landeck has defaulted several of his claims and that the remaining claims lack merit. Landeck has responded. For the reasons stated below, the Motion to Dismiss will be GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART.

## I.    PROCEDURAL HISTORY

Following a jury trial, the Circuit Court convicted Landeck of aggravated malicious wounding and sentenced him to an active term of ten years of incarceration. Landeck appealed, and the Court of Appeals of Virginia affirmed his conviction. *Landeck v. Commonwealth*, 722 S.E.2d 643, 645 (Va. Ct. App. 2012). The Supreme Court of Virginia refused Landeck's subsequent petition for appeal. *Landeck v. Commonwealth*, No. 120612, at 1 (Va. Sept. 13, 2012).

On September 9, 2013, Landeck filed a petition for a writ of habeas corpus in the Circuit Court raising Claims Two, Three (d), and Four (d) of the instant § 2254 Petition. (ECF No. 18-1, at 4-6.) On November 7, 2013, Landeck filed an amended petition adding Claims One, Three

(a)-(c), Four (a)-(c), and Five of the instant § 2254 Petition. (ECF No. 18-2, at 5, 7-11.) On May 21, 2014, the Circuit Court denied his petition. (ECF No. 18-3, at 19-20.) The Circuit Court denied Claims Two, Three (d), and Four (d) of the instant petition because they lacked merit (*see* ECF No. 18-3, at 13-19, and Claims One, Three (a)-(c), Four (a)-(c), and Five of the instant petition because they were untimely filed under section 8.01-654(A)(2) of the Virginia Code. (*See id.* at 5.) On February 3, 2015, the Supreme Court of Virginia refused his petition for appeal. (ECF No. 18-4, at 1.)[2]

## II. EXHAUSTION AND PROCEDURAL DEFAULT

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State exhaustion "'is rooted in considerations of federal-state comity,'" and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n. 10 (1973)). The purpose of the exhaustion requirement is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

---

[2] By Memorandum Opinion and Order entered on October 22, 2014, this Court dismissed Landeck's previously filed § 2254 petition because he had not yet exhausted his claims in state court. (*See* ECF No. 18-5.)

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "'opportunity'" to address the constitutional claims advanced on federal habeas. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)) (additional internal quotation marks omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quoting *Duncan*, 513 U.S. at 365–66). Fair presentation demands that a petitioner must present "'both the operative facts and the controlling legal principles' associated with each claim" to the state courts. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*,

4

501 U.S. at 735 n. 1).[3] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

Here, the Circuit Court found that Claims One, Three (a)-(c), Four (a)-(c), and Five of the instant petition were untimely under Section 8.01-654(A)(2) of the Virginia Code. (*See* ECF No. 18-3, at 5.) Virginia's statute of limitations for habeas actions is an adequate and independent procedural rule when so applied. *See George v. Angelone*, 100 F.3d 353, 363-64 (4th Cir. 1996); *Sparrow v. Dir. Dep't of Corr.*, 439 F. Supp. 2d 584, 587-88 (E.D. Va. 2006). Nevertheless, in Claim Six, instead of raising a new claim, Landeck alleges that the fact that he lacked counsel to assist him with his state habeas petition serves as the cause for his default of these claims. While the Court believes that Claims One, Three (a)-(c), Four (a)-(c), and Five are defaulted, in light of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), the fact that Landeck had no counsel at his "initial-review collateral proceeding" may establish cause for the procedural default of these claims. *Martinez*, 132 S. Ct. at 1320. Because of *Martinez*, judicial economy dictates that the Court addresses the merits of Claims One, Three (a)-(c), Four (a)-(c), and Five. *See Daniels v. Hinkle*, No. 3:11CV675, 2012 WL 2792199, at *1 (E.D. Va. July 9, 2012) (citing *Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999)). Respondent has not addressed the merits of these claims. Accordingly, the Motion to Dismiss will be DENIED WITHOUT PREJUDICE with respect to Claims One, Three (a)-(c),

---

[3] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

Four (a)-(c), and Five. The Court will DISMISS Claim Six because it merely raises his arguments of cause for the default of his claims in state court. Respondent will be directed to file a further response addressing the merits of these remaining claims.

### III.   THE APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS CORPUS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

## IV. PURPORTED INEFFECTIVE ASSISTANCE OF COUNSEL

### A.  Standard of Review

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### B.  Summary of Landeck's Guilt

Because a summary of Landeck's guilt aids in the resolution of Landeck's claims, the Court now turns to the evidence presented at trial. The Court of Appeals of Virginia aptly explained the overwhelming evidence against Landeck as follows:

> So viewed, the evidence at trial established that A.F.[4] intended to walk to a bus stop on Robinson Street in the City of Richmond at about noon on January 1, 2010. While A.F. was on the way to the bus stop, A.F. testified, he "was approached" on foot by appellants near the corner of Davis Avenue and Cary Street. According to the record in this case, A.F. is five feet four inches tall and 140 pounds, whereas appellants are significantly larger—Christopher Landeck is six feet two inches tall and 240 pounds, and David Landeck is six feet four inches tall and 275 pounds.

---

[4] We use the initials of the victim and of the witnesses who testified at appellants' trial, rather than their full names, so as to attempt to better protect their privacy.

A.F. testified that David Landeck called A.F. "a name," and then they "got to arguing." A.F. continued to walk in the direction of the bus stop, but David Landeck "pulled [a] knife out." A.F. "tried to go around him," but then Christopher Landeck "got right behind me." This initial confrontation ended when David Landeck put away the knife. A.F. walked away from appellants and in the direction of Mule Barn Alley, which connects Davis Avenue and Robinson Street. According to A.F., appellants told him to "go back and smoke some crack. Go sell some drugs. Stuff like that."

A second confrontation between appellants and A.F. occurred moments later in Mule Barn Alley. Christopher Landeck was driving appellants' vehicle at that time, with David Landeck in the passenger seat. A.F. testified that Christopher Landeck shouted from the vehicle, "There go that no good n* *ger right there." Defense witness D.E., a building contractor, testified that Christopher Landeck shouted, "[Y]ou're still a no good f* *king n* *ger." After Christopher Landeck uttered those words, according to A.F., appellants "[j]umped out the truck and came up towards me." A.F. testified that he then picked up a wooden board from D.E.'s materials trailer in the alley "to keep [appellants] away from me." According to A.F.'s trial testimony, Christopher Landeck had also picked up a wooden board. A.F. testified that he "lunged the board at them to keep them away from me" and, in so doing, struck Christopher Landeck with the board. A.F. then began running down the alley, but he stumbled in some potholes, and David Landeck caught up with him and grabbed him in a "bear hug." A.F. testified that he escaped momentarily, but stumbled again, and Christopher Landeck then hit him with a wooden board.

At trial, A.F. described being overwhelmed and beaten by appellants, testifying:

> [David Landeck] laid on top of me in the street while [Christopher Landeck] was hitting me with the board. I tried to get up and I couldn't get up, because he was so heavy laying on me. And he kept on hitting me. Kept hitting me with the board. Kept hitting me.

A.F. testified that the beating continued even though he "daze[d] out" three or four times. Each time he returned to consciousness, appellants would continue to strike him. A.F. testified that he was beaten in his face, causing him to bleed significantly. A.F. also testified that he was beaten in his left arm and shoulder, causing significant and permanent injury to that arm. A.F. spent two days in the hospital and underwent surgery to insert a plate and pins in his left arm, which still did not "work right" and had not improved at the time of trial.

In addition, Commonwealth's witness K.D., a tenant of a second-story apartment overlooking Mule Barn Alley, testified that she observed the appellants' beating of A.F. occur while he was "in a fetal position, kind of balled up in the street." K.D. called 9-1-1 during the beating, and her contemporaneous description of the beating was received into the trial evidence and played for the jury. At trial, K.D. testified:

> [A.F.] was basically trying to protect his head and his face as they were hitting him with the board, almost like a baseball bat. They

8

> were swinging it as hard as they could, and hitting him in the head. And you could hear the board hit his head. And as the board would hit his head, it would splinter into pieces. They were hitting him that hard. Then one would hit with a board and then the other one would kind of reposition his body and kick him in the ribs and punch him . . . .

Referring to a diagram of the area that was shown to the jury, K.D. also testified that appellants "were kind of walking in and out of Mule Barn Alley, right here, as they were coming back towards him, and kicking him, and punching him, and beating him with the board in the head." K.D. testified that she "just knew that they were going to kill him, just the way they were hitting him," adding that she had "never seen anything so graphic or horrifying in my life."

Appellants contended at trial that the evidence was insufficient as a matter of law to support convictions for aggravated malicious wounding because the evidence failed to prove that they acted with malice. Appellants claimed that they were provoked by A.F.'s act of striking Christopher Landeck with the wooden board—and that this provocation by A.F. created a heat of passion within appellants that negated any malice on their part. Thus, appellants asserted that the Commonwealth's evidence established, at most, unlawful wounding—a crime for which malice is not a required element. However, the trial court ruled that the presence of malice was an issue for the jury to decide, and the jury convicted appellants of aggravated malicious wounding.

*Landeck v. Commonwealth*, 722 S.E.2d 643, 645-46 (Va. Ct. App. 2012) (footnote number

altered from original; other alterations in original).

## C.   Analysis

In Claim Two, Landeck argues that counsel rendered ineffective assistance during trial

when he failed "to propose [an] alternate jury instruction" regarding "heat of passion." (§ 2254

Pet. 10 (internal quotation marks omitted).) Landeck claims that counsel should have submitted

an objection that "omitted a reference to a 'cooling off' period" and because he did not, it

undermined his argument on appeal. (Mem. Supp. § 2254 Pet. 8, ECF No. 2.) In extensively

examining and rejecting this claim, the Circuit Court found:

> On appeal [Landeck] sought to argue that the trial court erred in providing the proffered instruction to the jury, but that counsel's failure to proffer an alternative instruction caused the appellate court to view the evidence supporting the challenge to the instruction in a light most favorable to the prosecution. . . .

Landeck maintains that counsel's omission "doubl[ed his] burden on appeal" and deprived him of a fair trial. . . .

Regarding the effect of the presence of "heat of passion," the jury was given the following instructions:

> Heat of passion must be determined from the circumstances as they appeared to the defendant. Those circumstances must be such as would have aroused heat of passion in a reasonable person.
>
> If a person acts upon reflection or deliberation or after his passion has cooled or there has been a reasonable time or opportunity for cooling, then the act is not attributable to heat of passion.

T.T, p. 350.

In objection to this proposed jury instruction, trial counsel argued:

> My objection, if that is the one with the cooling off period, I have an objection to the language of the cooling off period, because there is no evidence before the Court of the cooling off period from the time of the provocation, which is being hit in the face with a board, until they are on Davis Street beating Mr. Faison. It is one continuous event.

T.T. p. 335.   Significantly, in response to this objection, this court noted, "Depends on what the facts are." T.T. p. 335.

The petitioner maintains that a proffered alternate instruction would have changed the landscape for appellate review of the propriety of the trial court's refusal to offer the same instruction without reference to any cooling off period, as counsel desired. As a threshold matter, the petitioner has failed to proffer what such an instruction would have looked like. To be certain, trial counsel was successful in having the heat of passion instruction presented to the jury. Landeck has failed to articulate what instruction he contends counsel should have offered to counter the "cooling off" language proposed by the prosecution. His failure to proffer is fatal to this claim. *See Muhammed v. Warden*, 274 Va. 3, 19, 646 S.E.2d 182, 195 (2007) (failure to proffer affidavits regarding testimony witness would have offered is fatal to *Strickland* claims). *Cf. Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."). *See also Bassette* [*v. Thompson*], 915 F.2d [932,] at 940-41 [(4th Cir. 1990)] (petitioner must allege "what an adequate investigation would have revealed.").

Moreover, even if counsel had taken the desired step of proposing some alternative instruction to that which was requested by the prosecution concerning the "cooling off period," the appellate court's inquiry would have been limited to the question of whether the trial court's instruction "clearly stated the law and had covered all of the issues which the evidence fairly raises." *Chibikom v. Commonwealth*, 54 Va. App. 422, 425, 680 S.E.2d 295, 296 (2009). "The trial judge has broad discretion in giving or denying instructions requested." *Id.* The "'cooling off' instruction requested by the prosecution was part of the model jury instructions." . . .

The existence of a "cooling off" period was a factual matter for the jury's resolution, as this court observed in response to the defense objection. T.T. p. 335. As a proponent of the instruction, the prosecution was entitled to have the evidence that supported inclusion of the "cooling off" instruction viewed in a light most favorable to its theory of the case. The standard model jury instruction given by the court was an accurate and complete statement of the law.

It may be assumed, *arguendo*, any hypothetical instruction counsel might have offered would merely have stated the "cooling off" language in the negative, suggesting if there were no opportunity for cooling off, the jury should find the existence of the heat of passion. However, "When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." *Huguely v. Commonwealth*, 62 Va. App. __, __ S.E.2d __ (2014) (slip op. at 33) (quoting *Stockton v. Commonwealth*, 227 Va. 124, 145, 314 S.E.2d 371, 384 (1984)). . . . *See also, e.g.*, *Eaton v. Commonwealth*, 240 Va. 236, 255, 397 S.E.2d 385, 396 (1990) (holding that the trial court did not abuse its discretion "in refusing to grant another, duplicative instruction"); *Gaines v. Commonwealth*, 39 Va. App. 562, 568, 574 S.E.2d 775, 778 (2003) (en banc) ("The defendant's instruction was no more or less correct than the instruction given. While it 'was a correct statement of the legal principles involved and the trial court, in its discretion, could properly have given the instruction, it does not follow that it was reversible error to refuse it.'" (quoting *Lincoln*, 217 Va. 370, 375, 228 S.E.2d 688, 692 (1976)).

As a consequence of this jurisprudence, the petitioner fails to demonstrate the requisite prejudice under *Strickland*, as there is no reasonable probability of a different outcome if counsel had proffered the desired instruction. The trial court was under no obligation to accept an additional instruction regarding "cooling off," and was within its discretion to permit the prosecution's desired instruction. Thus, there is no reasonable likelihood the appellate court would have determined the trial court abused its discretion in refusing such an instruction. This claim must therefore be denied and dismissed.

(ECF No. 18-3, at 13-17 (second alteration in original) (first and second omissions added) (paragraph numbers omitted).) Given that the resolution of Landeck's claim of ineffective assistance of counsel is highly dependent upon Virginia law, Landeck fails to demonstrate prejudice. *Richardson v. Branker*, 668 F.3d 128, 141 (4th Cir. 2012) ("When a claim of ineffective assistance of counsel raised in a habeas corpus petition involves an issue unique to state law . . . a federal court should be especially deferential to a state post-conviction court's interpretation of its own state's law."); *see Leslie v. Dir., Va. Dept. of Corr.*, No. 3:12CV726, 2013 WL 4039026, at *6-7 (E.D. Va. July 31, 2013) (finding petitioner could demonstrate no

prejudice because claims attacking counsel's failure to raise certain jury instructions was "highly

dependent upon Virginia law"). Accordingly, Claim Two will be DISMISSED.

In Claims Three (d) and Four (d), Landeck claims: "At trial, at the close of his rebuttal

argument, counsel for the Commonwealth made a scandalous, improper and racially

inflammatory comment to which the court sustained defense counsel's objection, however,

defense counsel ineffectively failed to object to the court's insufficient curative instruction."

(§ 2254 Pet. 15.) Landeck refers to the following statement made by the prosecutor during his

rebuttal closing argument: "Ladies and gentleman, you can't say you are a no good f*king

n**ger, beat someone for minutes and minutes and get away with it. This is Richmond, Virginia.

This is 2010. This is not 1955, and it is not Selma, Alabama. Convict these guys." *Landeck*,

722 S.E.2d at 648 (citing Oct. 7, 2010 Tr. 394). As Landeck admits, counsel immediately

objected to the statement, and the objection was sustained. Moreover,

> [t]he trial transcript reflects that the trial court immediately responded to these
> statements by the prosecutor—sustaining appellants' objection before appellants'
> trial attorneys could even finish articulating the basis for the objection. The trial
> court then promptly instructed, "The jury should not consider the last two
> statements by the Commonwealth. They are inappropriate.

*Id.* Landeck now argues that trial "counsel's failure to object to or address the issue of the

Court's failure to affirmatively and unequivocally strike the prosecution's improper comments

before the jury and preserve the issue for appeal was objectively unreasonable and presumptively

prejudicial . . . ." (§ 2254 Pet. 16.)[5] As discussed below, Landeck's contentions lack merit.

---

[5] To the extent Landeck attempts to argue that the Circuit Court erred by denying his motion for
a mistrial or erred by providing a "weak" curative ruling to the jury after the prosecutor's
improper remarks, Landeck identifies no constitutional violation, and instead challenges the
Circuit Court's determination of state law. The trial court's alleged error provides no basis for
federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the
province of a federal habeas court to reexamine state-court determinations on state-law
questions."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (citing cases for the proposition that
"federal habeas corpus relief does not lie for errors of state law").

In examining and rejecting this claim, the Circuit Court found:

Landeck contends counsel rendered ineffective assistance in failing to present the trial court with an argument raised for the first time on appeal concerning the court's instruction to the jury to disregard the improper closing argument of the prosecution. Landeck contends trial counsel's contemporaneous objection to the prosecution's racially charged closing argument and his motion for mistrial were insufficient, maintaining counsel should have explicitly alerted the court that its instruction to the jury to not consider the argument was insufficient to purge the matter from its mind. He maintains the jury instruction regarding rejected and stricken matters was too vague and remote in time to accomplish this end. . . .

As a threshold matter "a jury is presumed to have followed the instructions of the trial court." *Prieto v. Commonwealth*, 283 Va. 149, 169, 721 S.E.2d 484, 496 (2012) (quoting *Muhammad*, 269 Va. at 524, 619 S.E.2d at 58). Despite [Landeck]'s allegation that the jury must have been influenced by the prosecution's argument, notwithstanding the court's immediate instruction to the contrary, [Landeck] has failed to proffer any evidence demonstrating such was the case. Not only must [Landeck] allege facts to show that he has a valid claim, he must also allege facts to show that he has specifically been prejudiced. *See Fitzgerald [v. Bass]*, 6 Va. App. [38], at 44, 366 S.E.2d [615], at 618 [(1988)]; Va Code § 8.01-654(B)(2). Moreover, he fails to proffer what argument counsel might have made in addition to the immediate objection and motion for mistrial he raised. *Cf. Beaver*, 93 F.3d at 1195 . . . ; *See also Bassette*, 915 F.2d at 940-41. Finally, [Landeck] has offered no evidence or argument that any action counsel might have taken would have been granted by the trial court.

As the Court of Appeals observed in affirming [Landeck]'s conviction:
The Supreme Court "follow[s] the general rule that error arising from an improper question or improper conduct of counsel may usually be cured by prompt and decisive action of the trial court without granting a motion for a mistrial." *Black v. Commonwealth*, 223 Va. 277, 286, 288 S.E.2d 449, 454 (1982). In this case, the trial court specifically instructed the jurors that they should not consider the prosecutor's statements that concluded the Commonwealth's rebuttal argument. The trial court then amplified the reason for this cautionary instruction to the jury — explaining that these comments by the prosecutor were simply inappropriate. The effect of the trial court's actions is apparent from the trial transcript — David Landeck's trial attorney noted moments later that the trial court had "struck" the conclusion of the prosecutor's rebuttal argument. Thus, the record in this case certainly leaves no indication that the trial court conveyed to the jury that the prosecutor's remarks were proper, that it approved of these remarks, or that the jury should consider those remarks in reaching its verdict.

*Landeck v. Commonwealth*, 59 Va. App. 744, 756, 722 S.E.2d 643, 649 (2012).

In light of Landeck's failure to proffer any evidence supporting the allegation made in [Claims Three (d) and Four (d)], and with due consideration to the conclusion of the Court of Appeals, the petitioner fails to demonstrate the reasonable likelihood of a different outcome on appeal, if counsel had presented argument to the trial court concerning the weakness of its instruction to the jury. Thus, he fails to demonstrate the requisite prejudice necessary under *Strickland* to prevail on this claim of ineffective assistance of counsel.

(ECF No. 18-3, at 17-19 (paragraph numbers omitted) (last alteration in original).) The Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the rejection of Claims Three (d) [6] and Four (d). *See* 28 U.S.C. § 2254(d)(1)-(2). Counsel reasonably eschewed objecting to the alleged weakness of the Circuit Court's curative instruction. Instead, after the jury was excused, counsel appropriately moved for a mistrial based on these improper statements, and renewed his motion for a mistrial at sentencing. (*See* Oct. 7, 2010 Tr. 395-96.) Thus, the Court discerns no deficiency of counsel.

Moreover, entirely fatal to Landeck's argument that the prosecutor engaged in misconduct or that counsel deficiently failed to object to the Circuit Court's curative ruling is Landeck's failure to demonstrate any resulting prejudice. Landeck's guilt of committing aggravated malicious wounding was simply overwhelming. [7] Landeck fails to demonstrate that,

---

[6] It is not entirely clear whether Landeck's claim of prosecutorial misconduct was squarely before the Circuit Court. Nevertheless, as discussed below, this claim clearly lacks merit.

[7] A jury convicted Landeck of aggravated malicious wounding in violation of section 18.2–51.2 of the Virginia Code, which states in relevant part: "If any person maliciously shoots, stabs, cuts or wounds any other person, or by any means causes bodily injury, with the intent to maim, disfigure, disable or kill, he shall be guilty of a Class 2 felony if the victim is thereby severely injured and is caused to suffer permanent and significant physical impairment." Va. Code. Ann. § 18.2–51.2A. The undisputed evidence demonstrated that Landeck "laid on top of [A.F.] in the street while [Christopher Landeck] . . . [k]ept hitting [him] with a board," despite the fact that A.F. lost consciousness several times. *Landeck*, 722 S.E.2d at 646. A witness testified that she believed the Landecks would kill A.F. and that "she had 'never seen anything so graphic or horrifying in [her] life.'" *Id.* A rational factfinder could have found that Landeck acted with the intent to maim, disfigure, disable or kill, and therefore, acted with malice. Moreover, A.F.'s injuries required surgery and a plate and pins to be placed in the arm, and he testified that his arm

had counsel objected to the Court's curative instruction to the jury, he would have been acquitted, or that the Court of Appeals of Virginia would have reversed his conviction.[8] Because Landeck demonstrates neither deficiency nor resulting prejudice, Claim Four (d) will be DISMISSED.

To the extent that Landeck raised a claim of prosecutorial misconduct in his state habeas petition before the Circuit Court, this claim clearly lacks merit. Landeck fails to demonstrate any prejudice from the prosecutor's comments in his closing arguments. Overwhelming evidence of his guilt existed. Landeck fails to demonstrate that, in light of the Circuit Court's curative instructions and the jury's apparent understanding that the comments were improper and should not be considered (*see* Oct. 7, 2010 Tr. 396), the jury would have acquitted him. Claim Three (d) will be DISMISSED.

## V. CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 16) will be GRANTED with respect to Claims Two, Three (d), Four (d), and Six. Claims Two, Three (d), Four (d), and Six will be DISMISSED. The Motion to Dismiss will be DENIED WITHOUT PREJUDICE with respect to Claims One, Three (a)-(c), Four (a)-(c), and Five. Respondent will be directed to file, within thirty (30) days of the date of entry hereof, a further response

---

still "did not 'work right'." *Id.* Thus, A.F. sustained significant and permanent injury to his arm. A rational factfinder certainly could have convicted Landeck of aggravated malicious wounding.

[8] To the contrary, this argument would have certainly failed. On direct appeal, Landeck argued "that the trial court committed reversible error when it denied [his] motion for a mistrial" based on the prosecutor's statements during closing. *Landeck,* 722 S.E.2d at 648. The Court of Appeals of Virginia found that "[b]ased on the totality of the circumstances in this particular case—including the trial court's prompt and decisive acts of sustaining appellants' objection to the prosecutor's improper statements and issuing a cautionary instruction to the jury—the trial court did not err as a matter of law when it found that the jury's verdict ultimately was not influenced by the prosecutor's improper line of argument." *Id.* at 650.

addressing the merits of those remaining claims.  Landeck's Motion to Merge or Consolidate (ECF No. 13) will be DENIED WITHOUT PREJUDICE.

An appropriate Order shall issue.

It is so ORDERED.

/s/

Roderick C. Young
United States Magistrate Judge

Date:   January 25, 2016
Richmond, Virginia

16